MAY 1801

Ridgely
vs.
Norwood

RIDGELY *et ux*. Lessee, *vs*. NORWOOD.

*An objection by the defendant that the record transmitted under a writ of certiorari issued at his instance, was not under seal, overruled.*

*The court refused to direct the jury, that certain expressions in a grant for land were binding expressions, &c*

THIS was an action of *ejectment*, brought in Baltimore county court, and removed by the defendant to this court by a writ of *certiorari*, for four tracts or parcels of land, viz. *United Friendship*, otherwise called *The United Friendship, Ludloe's Lott, Larkin's Addition* and *Lloyd and Ludloe's Lott*, all lying in Baltimore county. Plots returned. The defendant took defence for all the land included in *Larkin's Addition*, and *The United Friendship*.

1. The plaintiff at the trial, offered to read to the jury the record of proceedings in this cause transmitted by the clerk of Baltimore county court, in pursuance of the writ of *certiorari* to the said county court, and to which said record the clerk omitted to affix the seal of the said court. To which the defendant's counsel objected, because it was not under the seal of Baltimore county court.

THE COURT, [*Duvall* and *Done, J. (a)*]. overruled the objection, and permitted said record to be read to the jury. The defendant excepted.

*Expressions in a grant of land left to the jury to decide whether they were binding or not*

2. The defendant produced and read to. the court, a grant for the land called *Yates his Forbearance* granted to "*George Yate* of Anne Arundel county," on the 20th of July 1684, and described to be "lying in, Baltimore county, on the N. side of Patapsco river, in the woods, (1) beginning at a bounded oak at the end of the N. line of the land of *Thomas Roper*, and running from the said oak W. 210 perches, (2) then running N. 140 perches, (3) then W. 100 perches, (4) then S. 100 perches, (5) then W. 100 perches, (6) then N. 160 perches, (7) then W. S. W. 200 perches, (8) then N. 160 perches, (9) then E. 588 perches, (10) then with a straight line drawn S. to the first bounded tree, containing and now laid out for 770 acres, more or less," &c. He also produced and read to the court, a grant to *John Larkin* for the land called *The United Friend-*

(a) *Chase*, Ch. J. owing to indisposition did not attend.

*ship*, dated the 1st of September 1687, (1) "beginning at a red oak standing on a high point by a small gut on the N. side of Patapsco river, in Baltimore county, about a mile below the falls, and running thence down the river E. 160 perches, to another bounded oak, (2) then running N. into the woods 200 perches, (3) then running W. 100 perches, (4) then running N. 160 perches, (5) *then running W. 60 perches, with a tract of land lately taken up for George Yates, of Anne Arundel county, gentleman*, (6) then running W. S. W. 200 perches, *with the said land*, (7) then running S. 230 perches, *bounding on the said Yates's land*, (8) then running S. W. 44 perches, to the aforesaid river, (9) then running down the river S. and by W. 28 perches, (10) S. 38 perches, (11) then running S. S. E. 30 perches, (12) then running E. S. E. 20 perches, (13) lastly running E. N. E. 200 perches, to the first bound tree, containing in all 700 acres, more or less," &c. Both of which said tracts of land are located upon the plots.

The defendant then prayed the opinion of the court, and their direction to the jury, that if the jury are of opinion that the tract of land called *Yates his Forbearance*, as located upon the plots, is the same land meant and referred to in the grant for the land called *The United Friendship*, by the name and description of "a tract of land lately taken up for *George Yates*, of Anne-Arundel county, gentleman," that then the location of the said land called *The United Friendship*, must be laid down so as to make the fifth line thereof run with and bind on the fifth line of the land called *Yates his Forbearance*, from the place where the said last mentioned line of *The United Friendship* reaches and strikes by the true location thereof the said last mentioned line of *Yates his Forbearance*.

THE COURT, [*Duvall* and *Done, J.*] refused to give such opinion or direction to the jury. The defendant excepted; and the verdict and judgment being for the plaintiff, the defendant appealed to the court of

appeals.    The case was argued in that court at November term 1803, by

    *Ridgely* and *Mason*, for the Appellant and
    *Martin*, (Attorney General,) for the Appellee.

1. It was argued by *Martin*, (Attorney General,) on the *first bill of exceptions*, that as the defendant had taken defence in the general court on warrant, and pleaded to the declaration, and had put the plaintiff to the expense of surveys, preparations for trial, expense of witnesses, and had actually entered on the trial, all under *a removal* of his own, it was now too late for him to make the objection stated in this bill of exceptions; that if the plaintiff did not object to the mode of removal, the defendant had no right to do so, it being his own act; and that an appearance to a suit cured all errors in the proceedings before appearance—therefore, that as the parties did appear and act on the record removed, no inquiry could now be made into any defect in that removal, especially on the part of the defendant, who by the removal stopped the plaintiff from proceeding in the court below. The attorney general cited *Skinner, 554. 2 Freeman, 468. 1 Ventris, 220.*

2. On the *second bill of exceptions*. He contended that as the *fourth* line of *The United Friendship had no call of any kind*, but runs so many perches a particular course, there was *nothing to stop that line from running to its full length;* and it was a general principle, that where a line runs course and distance, having *no call,* it cannot be *shortened* or *lengthened.* The next course, that is to say, the fifth, it was true, called to run with the fifth line of the tract called *Yates his Forbearance,* which only shews that it was supposed, that the fourth line ended in the fifth line of that tract, and therefore that the next line would run with the fifth line. But as there were no expressions to stop the fourth line, when it came to the fifth line of *Yates his Forbearance,* it must run *to its length,* and the subsequent courses and calls, running with *Yates's* land, shews how ignorant they were of the situation of *Yates his Forbear-*

*ance,* for there were no courses of *Yates his Forbearance* corresponding with the courses to be run.

The prayer was not, whether the jury *might* locate the land so as to run with the fifth line of *Yates his Forbearance,* if from all the evidence it appeared to gratify the intent of the parties, but whether they *must,* or were obliged at all events so to locate it. Had the fourth course been expressed *to stop* at the *fifth line,* it would have been a very different case. But as there was nothing to restrain the fourth line from running the number of perches, there was nothing *to oblige* the *fifth line* to *be confined* to the *fifth line* of *Yates his Forbearance;* at most it could only be in the discretion of the jury so to locate the tract, if from the whole evidence they thought that such a location would carry into effect the intention of the parties, that being the polar star by which the jury in cases like the present should be governed.

MAY 1801

Ridgely
vs.
Norwood

THE COURT OF APPEALS *affirmed* the judgment of the General Court, concurring with that court in the opinions expressed in *both* of the *bills of exceptions.*

*Note.* The question decided in the *second bill of exceptions* in this case, has been since overruled by the Court of Appeals in the case of *Norwood vs. Carroll et al. lessee,* at December term, 1812.